62   455
126   217
e126   223

Moses, trustee, *vs.* The Eagle and Phenix Manufacturing Company.

[This case was argued at the last term and decision reserved.]

1. Deeds to certain of nineteen water-lots on the Chattahoochee river, with descriptive words of the following character in each deed, to-wit: "Running to a point twenty-five feet of the eastward wall of the rock canal or reservoir constructed in the bed of said river Chattahoochee, thence running south seventy-two feet to the south line of said lot and leaving twenty-five feet between the west end of said lot and the eastern wall of said reservoir or canal for a water passage or water-way," etc., with a covenant that the grantee shall be entitled to use the one-nineteenth part of all the water of the river commanded by said canal, from a grantor having title up to the Alabama line across the river, convey an absolute estate in fee to said lots only to the western line therein described, with an easement to use the water under the covenant beyond said limits—leaving the fee in the grantor to the remainder of the river-bed up to the

Alabama line; and such fee, though incumbered with such service to the dominant estate granted, is liable to levy and sale under a judgment and execution against the grantor.

2. This construction of the deeds apparent on their face is strengthened by other covenants therein and other surrounding facts.

3. Possession of the estate so granted will not ripen into a prescriptive title, or discharge the fee from the lien of the judgment, beyond the boundaries embraced in the deed.

4. Under the facts of this case no stockholder of the Water Lot Company can set up the deed by which he acquired his stock as color of title to found a prescription upon with reference to the premises in dispute, as against the Water Lot Company or the judgment creditor. If the Water Lot Company never conveyed the premises, they constitute a trust fund to pay the debts of the corporation, and the stockholder being chargeable with notice of the trust, cannot hold adversely so as to defeat a judgment creditor of the trust.

5. The value of the servient estate, so incumbered with the right of the dominant estate to the use of the water flowing thereon, is immaterial; the sole question is, is it liable to be sold under this execution.

Deeds. Estates. Easement. Levy and sale. Prescription. Stockholders. Trusts. Notice. Before Judge CRAWFORD. Muscogee Superior Court. May Term, 1878.

An execution in favor of Van Leonard, trustee, against the Water Lot Company, was levied on certain water-lots, which were claimed by the Eagle and Phenix Manufacturing Company. The Chattahoochee river, between the city of Columbus and the Alabama side of the river, has been laid off into lots, called "water-lots," for manufacturing purposes, and these form the subject matter of this case. (See 11 *Ga.*, 556.) The claimant insisted that it had a fee simple title by reason of certain deeds from the Water Lot Company to its vendees, of the form set out in the first division of the opinion, the claimant claiming under these vendees. Plaintiff in execution insisted that such deeds did not convey the entire lots but only parts of them, with an easement as to water from the balance, or that part of them which lay next to the Alabama line.

The Water Lot Company was an incorporated company; its stock was not divided into shares or certificates, but con-

sisted of land (and water), and the interest which each incorporator had in this appears to have represented the amount of his interest or stock in the corporation; the company made deeds to its members, and such interests were conveyed from one to another by deeds. The judgment under which this levy was made was rendered in 1859. Howard was the originator of the company. Baird, Jeter and Carter, each became one-fourth owners with him; they sold to Colquitt; he sold to Echols about 1863; under him, by a chain of title, claimant lays claims to a three-fourth interest, and under a chain of title from the executors of Howard, to the other fourth. The corporation does not seem to have ever been formally dissolved, but gradually dropped out of view, and the individual owners held in their own names.

On the trial the jury found for claimant. Plaintiff in *fi. fa.* moved for a new trial on the following, among other grounds:

1. Because the court refused to charge to the effect that the deeds of the form set out conveyed a fee simple title only to the boundaries described in them, with an easement of water on the balance of the lots beyond the specified boundaries. The court, on the contrary, charged to the effect that the deeds conveyed a fee simple title to the whole of the lots.

2. Because the court charged in effect that a *bona fide* purchaser, without notice, and with four year's possession, would be protected against this levy.

3. Because the court charged as follows: "It is possible for a man to hold property that originally belonged to corporators, and still not choosing to act with the corporation, claim title individually, and afterwards sell to others, who might do the same thing, and when all the property so bought and so held, none choosing to act under the corporate powers given under the charter, if the property itself were of such a nature as that each owner could hold it independently and adversely as against the rest, then they might, after the lapse of sufficient time, each get a good title individually."

4. Because the verdict was contrary to law and the evidence.

The motion was overruled, and plaintiff excepted.

Van Leonard, trustee, having died, Moses, trustee, was made a party in his place.

R. J. Moses; Blandford & Garrard, for plaintiff in error, cited as follows : On easements, Washburn on Serv. & Eas., 2, 3, 9, 14, 34, 37, 46 ; 2 Barn. & Ald., 724. On construction of deed, 15 Johns., 454 ; 4 Hill, (N. Y.), 382, 367 ; Washburn on Real Property, 404 ; Code, §3580 ; 14 Pick., 63 ; 53 *Ga.*, 148. Previous rulings on this subject-matter, 30 *Ga.*, 540 ; 39 *Ib.*, 574 ; 52 *Ib.*, 12 ; 53 *Ib.*, 619 ; 57 *Ib.*, 249 ; 58 *Ib.*, 280.

Peabody & Brannon; James Johnson, for defendant.

Jackson, Justice.

1. One of the controlling questions in this case arises upon the construction of the deeds under which the Eagle and Phenix Company claims the property levied on. That property is land lying west of a certain line in the Chattahoochee river, so many feet from a rock-wall constructed therein, belonging to or parts of water-lots, Nos. 2, 11, 12, 13, 14 and 15. The whole of these lots once belonged to the defendant in execution, the Water Lot Company. That company made conveyances of these lots, or parts of them, according as those deeds may be construed, to certain persons from whom the claimant purchased, or through whom the claimant holds. The plaintiff in execution insists that the fee by these deeds passed into the purchasers from the company only to the west line in the river above referred to, with an easement in the water beyond—leaving the fee to the land beyond, under the water, still in the defendant in execution, to the Alabama shore of the river ; whilst the claimant insists that the entire title to all of these lots passed into their grantors and thence into them. One of the deeds is set out fully in the record as a sample of the

Moses, trustee, *vs.* The Eagle and Phenix Manufacturing Co.

others, and the true construction thereof must settle this point.

The deed to number three (the others being agreed to be similar upon this point) in its descriptive words is as follows : "All that tract or parcel of land lying, situate and being in the city of Columbus, in said county and state, included in the grant made by the legislature of the state of Georgia, of the West Commons on Bay street for water-lots to said city of Columbus, and known and distinguished in the plan of the survey of said water-lots in the Chattahoochee river, in said city of Columbus, as lot number three (3), beginning on Bay street, as designated by said act of the legislature, and defined by said survey in pursuance thereof, at the southeast corner of lot number two (2) in said survey, and running west on the line dividing lots two and three to a point twenty-five feet of the eastward wall of the rock canal or reservoir, constructed in the bed of said river Chattahoochee, thence running south seventy-two feet to the south line of said lot number three (3), and leaving twenty-five feet between the west end of said lot number three (3) and the eastern wall of said reservoir or canal, for a water-passage or water-way, thence running east on the south line of said number three (3) to Bay street aforesaid, thence north along Bay street seventy-two feet to the beginning."

Then follow certain covenants that the grantee and his heirs and assigns, are to do certain blasting, that his buildings are to be fire-proof, and erected in certain proportions, so as to leave eleven feet between the walls of the buildings and the line of the lot, and are to be chargeable with one-nineteenth part (there being nineteen lots) of the expense of repairing the dam across the river and the canal or reservoir.

Then follows this covenant : "And said Water Lot Company, of the city of Columbus, hereby covenants with the said John H. Howard, his heirs and assigns, that the said John H. Howard, his heirs and assigns, shall be entitled to

use one-nineteenth part of all the said water commanded by the said dam and canal, which water shall be taken from said canal and conducted across the water-passage or waste-way in flumes or aqueducts, in such manner as not to impede or obstruct the passage of the water through said waste-way from the machinery above said lot number three (3.)"

Then follows another covenant to the effect that the Water Lot Company will not erect, or grant the privilege to others of erecting, on any of said water-lots from No. 1 to No. 19, any buildings other than fire-proof, and that the buildings on the lots adjoining number three shall be eleven feet from the north and south lines of number three.

Then follows the *habendum* and *tenendum* as follows : 'To have and to hold the above granted and bargained premises, with the appurtenances, privileges and easements thereof, as herein described and defined, unto him, his heirs and assigns, etc."

The boundaries of the land conveyed seem to us clearly defined in this deed. The Water Lot Company held to the Alabama line, which is, we understand, high water mark on the western side or shore of the river. If it meant to convey all of number three to that line, it would have been easy and simple so to have said in the deed ; but instead of so stating in the deed, it expressly and plainly defines the western line of the lot as in the river, at a certain number of feet from "the eastward wall of the rock-canal or reservoir constructed in the bed of the river." The fee therefore passed only to that line, but as it was a water-lot and valuable for manufacturing purposes, an easement in water necessary for such purposes is granted, with stipulations in regard to contribution of expenses of repair, etc., etc.

2. The other covenants set out and referred to in this opinion strengthen the correctness of this construction of the deed. It would seem to be necessary to reserve some fee in the Water Lot Company in order to carry into effect its several covenants with the several grantees. It seems to

Moses, trustee, *vs*. The Eagle and Phenix Manufacturing Co.

us that the deed and covenants therein, and the circumstances surrounding the grant as disclosed in the record, make it clear that this was a grant of a fee to part of lot three, with easement or water privilege as to the balance of the lot, and indeed to a certain part·of all the water controlled by the canal. A *servient fee simple* title was reserved to the remainder of the lot, subject and subservient to the right of the dominant estate in the grantee to the use of the water, so that the fee remaining in the grantor can never be used in such manner as to interfere with the superior rights of user granted to the superior or dominant estate.

See Washburn on Servitudes and Easements, 2d Ed., pp. 2, 3, 9, 14, 37, 46; Wash. Real Property, 4 Ed., p. 404; Doe *vs*. Wood, 2d Barn. & Ald., 724; Jackson *vs*. Hatchaway, 15 Johnson, 454; Child *vs*. Starr, 4 Hill, N. Y., 382, cited by plaintiff in error.

The deed to Van Leonard, trustee, is, if different at all, more striking in its terms, as conveying the same part of number eleven. And the deeds from the city to the original parties who afterwards made the Water Lot Company contain covenants which seem to make necessary the retention of the fee in order to fulfil them.

But it is hardly necessary to invoke all this aid from other deeds and the covenants in these deeds in order to construe them. The boundary is fixed in the deeds themselves, and west it stops at a defined line in the bed of the river, and does not extend to the Alabama shore, so that the land conveyed does not cover the part of the lots levied on.

3. Of course possession of the property under such deeds from the defendant in *fi. fa.*, so conveying title to parts of the lots in fee, with easement to water in the remainder of them, will not discharge the fee not sold from the lien of the judgment, though the grantees had been in possession four years. They were in possession under these deeds, and their possession was of the fee to the boundary in the river and of the easement beyond. But they were

not, under these deeds from the defendant in execution, in possession of the land beyond the line defined in the deeds. It is that fee which is levied upon, and that fee is not discharged from the lien of the judgment by virtue of the four years statute.    Code, §3583.

Nor can possession under these deeds ripen into a good prescriptive title to the fee beyond the boundary ; for the color of title is the deeds and they extend only to that line. By prescription the title is good to the land as far as the western line in the river and to the easement beyond, but it does not, under these deeds, extend to the fee beyond that boundary.    Code, §§2680, 2681, 2682, 2683.

4. Nor can any prescription be based upon deeds to the stock-holders of this company to stock therein.    Their possession under such deeds was not adverse to the Water Lot Company, and therefore seven years, or any other number of years' possession under such deeds, could not ripen into a title to defeat the judgment creditor of the company. If they were stock-holders in the Water Lot Company, (and the deeds seem to make them so) then they were chargeable with notice that this property—this unconveyed fee to parts of the lots—was a trust fund to pay the debts of the corporation, and knowing of the trust, they could not hold adversely so as to defeat a judgment creditor of the trust.

We think, then, that under the facts disclosed in this record, (what other facts not therein disclosed may do we cannot say) the claimant is not protected by title by prescription resting upon the deeds exhibited in the record.

5. In respect to what this fee levied upon is worth, incumbered as it is with the right of the dominant estate to the use of the water flowing thereon, we have nothing to say.    Its value will be tested on the block.    Whether worth little or much, if the title to it be still in the defendant in execution, the judgment creditor has the right to sell it.

Judgment reversed.